IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 3:19-cv-872-RAH |
| ) | (WO) |
| TERILL DRAKE and COUNTRY ) | |
| CASUALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter concerns the "foreclosure-after-loss" rule and in particular, Plaintiff JPMorgan Chase Bank, N.A.'s (the mortgagee) efforts to obtain insurance proceeds issued after the insured and mortgaged property, formerly owned by Defendant Terill Drake ("Drake"), was destroyed in a fire. Pending before the Court is JPMorgan Chase Bank, N.A.'s ("JPMorgan") Motion for Default Judgment Against Terill Drake ("Default Motion"), (Doc. 16), and Motion for Summary Judgement, (Doc. 23), on the sole claim for relief; that is, a declaratory judgment that JPMorgan is entitled to the full amount of the insurance proceeds at issue against any right or interest that Drake may claim. For good cause shown, both of JPMorgan's motions are due to be GRANTED.

1

## BACKGROUND

The facts in this case are straightforward and generally without dispute, even under the default judgment standard by which this Court must view the facts as applicable to Drake.

On April 3, 2009, Drake executed a Note in the original principal amount of $88,740.00 (the "Note") payable to American Southwest Mortgage Corp. ("American Southwest") and its transferee. (Doc. 1-1, at 2-4; Doc. 23-1, at 6-8.) The Note was secured by a Mortgage (the Note and Mortgage, collectively, the "Loan"), executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for American Southwest and its successor and assigns, on real property located at 216 Franklin Road, Roanoke, Alabama 36274 (the "Property"). (Doc. 1-2; Doc. 23-1, at 1-19.) The Note subsequently was endorsed and transferred to JPMorgan, and the Mortgage assigned to JPMorgan as well. (Doc. 1-1, at 4; Doc. 1-3; Doc. 23-1 at 21.)

Pertinent to the issues in this lawsuit, the Mortgage required Drake to procure hazard insurance coverage with a policy that contained a "standard mortgage clause" and a policy that named the lender (here, JPMorgan) as a mortgagee and/or an additional loss payee. (Doc. 1-2, at 5, § 5; Doc. 23-1, at 13, § 5.) Section 5 of the Mortgage also provided that if the lender acquired the property via a Section 22 remedy (i.e., foreclosure), Drake assigned to the lender all of Drake's "rights to any

insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument" and granted the lender authority to "use the insurance proceeds . . . to pay amounts unpaid under the Note or [the Mortgage]." (Doc. 1-2, at 5, § 5; Doc. 23-1, at 13, § 5.)

On August 23, 2015, the structures on the Property were destroyed in a fire. (Doc. 1, at 3; Doc. 23-2, at 2.) At the time of the fire loss, the Property was insured by an insurance policy, Policy No. CK7382416 (the "Policy"), issued by Defendant Country Casualty Insurance Company ("Country Casualty"). (Doc. 1, at 3; Doc. 23-2, at 3-44.) The Policy listed Drake as the insured and JPMorgan as the mortgagee. (Doc. 23-2, at 4-5.) At that time, Drake owed $93,681.16 on the Loan. (Doc. 23-1, at 4, 34.)

Country Casualty adjusted the loss and issued payment in the amount of $80,724.46, jointly payable to Drake and JPMorgan. (Doc. 1, at 4.) That payment has not been endorsed or deposited by JPMorgan due to Drake's refusal to endorse the payment[1] over to JPMorgan. (Doc. 1, at 4.)

After a default on payments by Drake, on January 30, 2018, JPMorgan foreclosed on the Property. (Doc. 1, at 4; Doc. 23-1, at 3-4, 31-32.) JPMorgan was

---

[1] Country Casualty has actually issued two claim checks: the initial check and then a replacement check after the initial check went stale.

the highest and best bidder at auction with a cash bid of $5,680, and acquired the Property via a foreclosure deed. (Doc. 1, at 4; Doc. 23-1, at 3-4, 31-32.)

After crediting the proceeds from the foreclosure sale, Drake's outstanding indebtedness amounted to $88,001.16.[2] (Doc. 1, at 5.) That amount remains unpaid.

## APPLICABLE LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden

---

[2] Drake apparently ceased making payments on the Loan in April 2014. (Doc. 23-1, at 23.) A notice of default was mailed to Drake on May 4, 2016 and a notice of acceleration on June 9, 2016. (Doc. 23-1, at 23, 28.) The record is unclear as to the precise amount actually owed by Drake at the time of the foreclosure, but no evidence is presented suggesting that Drake made any payments after the date of the fire loss. Assuming that to be the case, the amount owed by Drake would be no less than $88,001.16, i.e., $93,681.16 less $5,680.

4

of proof. *Id.* at 322-24. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also id.* at 1116, n. 3 (discussing FED. R. CIV. P. 56(e)) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1565, n. 6 (11th Cir. 1997); *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

However, if there is a conflict in the evidence, "the [plaintiff's] evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## ARGUMENT

In its count for declaratory relief, JPMorgan "requests this Court enter a declaratory judgment directing that Country Casualty cancel any previous check(s) and disburse the insurance funds directly to Chase to partially satisfy Ms. Drake's indebtedness, and further requests all other relief, legal or equitable, that it may be entitled to, or that the Court deems just and proper." (Doc. 1, at 6.)  The primary basis for this request is JPMorgan's position that, due to the "foreclosure-after-loss" rule, the assignment of proceeds clause in the Mortgage, and the fact that the outstanding indebtedness exceeds the amount of the insurance proceeds, JPMorgan has sole right in the insurance proceeds over any interest that Drake may have or claim.  From that springs JPMorgan's position that it is entitled to have the previous insurance checks canceled and a directive issued to Country Casualty to reissue the

6

fire loss payment solely to JPMorgan so that the proceeds can be applied against Drake's outstanding post-foreclosure indebtedness owed to JPMorgan. Given the record before the Court, the "foreclosure-after-loss" rule, and Drake's failure to defend this action or voice any opposition to JPMorgan's requested relief, the Court will grant JPMorgan's two pending motions.

### 1. JPMorgan's Motion for Default Judgment

The first order of business is JPMorgan's Default Motion against Drake. The record shows that Drake was personally served with the Summons and Complaint on February 23, 2020. (Doc. 13; Doc. 14.) The record also shows the court clerk's entry of default against Drake on April 28, 2020. (Doc. 15.) Therefore, JPMorgan's request for a default judgment is ripe for consideration.

Once a default is entered, as is the case here, a plaintiff may seek entry of a default judgment against the defaulting defendant. *See* Fed. R. Civ. P. 55(b). By defaulting, a defendant is taken to admit the well-pleaded allegations of fact in a plaintiff's complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). Although facts are admitted as true, conclusions of law are not; a sufficient basis to state a claim must still exist in the pleadings before a court may enter a default judgment. *Nishimatsu*, 515 F.2d at 1206. Whether a complaint supports "a sufficient basis" for a default judgment has

been interpreted as the same standard that is applied on a motion to dismiss for failure to state a claim. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")). Thus, the Court must look to see if the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Surtain*, 789 F.3d at 1245. (citations omitted). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

While generally the Court's default analysis is similar to that for a motion to dismiss, the facts set forth in JPMorgan's Complaint are further substantiated here because JPMorgan also has moved for summary judgment against Country Casualty, and with that motion, has presented sworn testimony and authenticated documents in support of its position. Accordingly, as will be discussed in more detail later, the Court is satisfied that the requested relief against Drake is due to be granted, not just because of the inferences and findings that attend a default judgment, but also because the evidentiary submission of JPMorgan in support of its summary judgment motion commands it. Therefore, JPMorgan's Default Motion against Drake will be granted for the reasons more particularly described below.

## 2. The Declaratory Judgment Claim

As it concerns the merits of JPMorgan's requested relief, the undisputed facts clearly set the stage for application of the foreclosure-after-loss rule.

The Alabama Supreme Court established the foreclosure-after-loss rule in *Aetna Ins. Co. v. Baldwin County Bldg. & Loan Ass'n*, 163 So. 604 (1935). The rule provides that "if there is a foreclosure upon mortgaged property after the property has sustained a loss or damage, the mortgagee may elect one of two remedies. The mortgagee may collect the insurance proceeds arising from the damage to the property, in satisfaction of the full mortgage debt, up to the limits of the policy. Alternatively, the mortgagee may seek repayment through a foreclosure sale. **If the sale does not fully satisfy the debt, the mortgagee may recover the balance from the insurance proceeds.** If, however, the sale does satisfy the debt, the mortgagee has no further claim upon the insurance proceeds." *American Fire and Indem. Co., Inc. v. Weeks*, 693 So. 2d 1386, 1388 (Ala. 1997) (internal citations omitted).

Here, the pertinent facts are without dispute. First and foremost, JPMorgan is the mortgagee and acquired ownership of the Property via foreclosure. The foreclosure occurred after the fire and resulted in only partial satisfaction of the outstanding indebtedness owed to JPMorgan. Further, the outstanding post-foreclosure indebtedness, $88,001.16, exceeds the amount of the insurance proceeds, $80,724.46. Since "the sale [did] not fully satisfy the debt, [JPMorgan] may recover

9

the balance from the insurance proceeds." *Id.* at 1388. Therefore, under the foreclosure-after-loss rule, JPMorgan is entitled to all of the insurance proceeds.

As an additional basis for its right to the proceeds, JPMorgan also points to the language in the Mortgage whereby Drake expressly agreed to and assigned to JPMorgan all of Drake's "rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument." (Doc. 1-2, at 5, § 5; Doc. 23-1, at 13, § 5.) Such provisions have been recognized as valid assignments by mortgagors of their rights to insurance proceeds. *See, e.g.*, *Moreno v. Wells Fargo Bank, N.A.*, No. 18-CV-2760, 2020 WL 362799, at *6 (D. Minn. Jan. 22, 2020); *James v. Allstate Property and Casualty Insurance Company*, No. 2:15-cv-12224, 2017 WL 5661343, *5 (E.D. Mich. Sept. 12, 2017); *see also Wilmington Savings Fund Society, FSB as Trustee of Stanwich Mortgage Loan Trust A v. Otieno-NGOJE*, No. 2:16-05631, 2020 WL 747066, *4 (D.N.J. Feb. 14, 2020).

In summary, both the foreclosure-after-loss rule and the assignment of proceeds provision in the Mortgage justify the basis for JPMorgan's requested declaratory relief; that is, JPMorgan's right to the entire amount of the insurance proceeds over any claim or interest of Drake. Since neither Country Casualty nor Drake opposes JPMorgan's requested relief, and since Drake has chosen not to defend this action, the Court concludes that JPMorgan is entitled to recover the entire amount of the insurance proceeds, $80,724.46. Moreover, since Drake has

previously failed to endorse the prior insurance payment over to JPMorgan despite JPMorgan's requests for her to do so, the Court also grants JPMorgan's requested relief that Country Casualty re-issue payment in the amount of $80,724.46 solely to JPMorgan.

## CONCLUSION

For the reasons set forth herein, Plaintiff JPMorgan Chase Bank, N.A. is entitled to the declaratory relief requested in its Complaint. Accordingly, it is hereby ORDERED as follows:

1. Plaintiff JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment (Doc. 23) is due to be and is hereby GRANTED;

2. Plaintiff JPMorgan Chase Bank, N.A.'s Motion for Default Judgment (Doc. 16) against Terill Drake is due to be and is hereby GRANTED.

3. All rights and interest in the $80,724.46 in insurance proceeds is hereby awarded to JPMorgan Chase Bank, N.A. As such, Defendant Country Casualty Insurance Company shall re-issue a check (or make payment electronically) in the amount of $80,724.46 payable solely to JPMorgan Chase Bank, N.A. and shall, if not done already, cancel all previous checks jointly issued to Drake and JPMorgan Chase Bank, N.A. associated with the insurance claim. Once in receipt of the funds, JPMorgan Chase Bank, N.A. shall apply the insurance funds against the outstanding indebtedness of Terill Drake under the Loan.

4.      No costs are taxed.

5.      A separate judgment will be issued.

DONE, this 9th day of October, 2020.

                                        /s/ R. Austin Huffaker, Jr.
                              R. AUSTIN HUFFAKER, JR.
                              UNITED STATES DISTRICT JUDGE